638 So.2d 291 (1994)
Mark MARGIN
v.
Sidney BARTHELEMY as Representative of the New Orleans Sheriff's Department, Superintendent of Police, Warren G. Woodfork, and New Orleans Rosenbush Claims Service, Inc.
No. 93-CA-2224.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 1994.
Rehearing Denied July 19, 1994.
*292 Linda M. Meyer, Roberts, Katz & Baudier, New Orleans, for plaintiff/appellee.
Neil J. Kohlman, Asst. City Atty., Bruce E. Naccari, Acting First Asst. City Atty., Kathy L. Torregano, City Atty., New Orleans, for defendants/appellants.
Freeman R. Matthews, Maida Magee Riess, Usry & Weeks, Metairie, for Charles C. Foti, Jr./Criminal Sheriff for the Parish of Orleans.
Before JONES, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.
Defendants-appellants the City of New Orleans and Office of the Criminal Sheriff Charles C. Foti, Jr. both appeal from a judgment of the Civil District Court, Parish of Orleans, the Honorable Thomas A. Early, Jr., presiding which finds that plaintiff Mark Margin was injured while in the course and scope of his duty as deputy sheriff and that his injury is therefore compensable under the Worker's Compensation Act. The judgment further finds that plaintiff's return to work on May 28, 1988, and subsequent salary received were in lieu of workman's compensation and therefore interrupted prescription and orders supplemental earnings benefits of $197.00 per week from September 1, 1989, with past interest on each payment, continued medical treatment to the claimant with a doctor of his choice, and rehabilitation and retraining. The judgment lastly denies attorneys' fees and orders each party to bear its own cost and attorneys' fees.
We affirm the court's award of Worker's Compensation, reverse the award of permanent disability and $197 per week supplemental earnings benefits and remand to the trial court for a recalculation of supplemental earnings benefits.
*293 The trial court provided the following oral reasons for judgment:
THE COURT:
This matter was tried in December of 1992 and kept as an open case to allow other witnesses to testify. Those witnesses have testified by deposition, which depositions have been submitted to the Court.
This is a workman's compensation case brought by the plaintiff against the defendants, the City of New Orleans, and the Office of Criminal Sheriff of the Parish of Orleans ...
The Court hereby grants a judgment on behalf of the plaintiff for the following reasons: The plaintiff, Mark Margin, worked as a deputy sheriff doing the work of a deputy sheriff at the various correctional institutions run by the Sheriff's Office here in the City of New Orleans. On May 3, 1987 this Court finds that the plaintiff initially injured his right knee while he was playing basketball in the yard of the House of Detention. He reinjured the knee that same day while climbing some stairs getting a bucket of ice to put on the knee.
The first issue is: Is workman's compensation allowed while he was injured playing basketball? The Court finds that it is. The Court finds that the plaintiff could not leave the premises, that he was on duty during the twelve-hour shift and during the lunch break, not allowing him to leave the premises, and he played basketball which the Court finds was generally known by the officers in charge.
Therefore, the Court finds that the injury of the knee while playing basketball is compensable under the Workman's Compensation Act.
He suffered a rough injury to his knee and arthroscopic surgery was performed on May 5, 1987 by Dr. James Butler for a partial tear of the anterior cruciate ligament, and also for a tear of the posterior horn of the medial meniscus of the right knee.
Without going into a lot of detail about the knee, the plaintiff has suffered a severe injury to his knee which still bothers him in which the testimony is replete in the transcript that indicates the problem he is having with the knee. He is still having problems with the knee and the Court is of the opinion that he has at least a twenty-five percent permanent impairment of the function of his right lower extremity.
After two operations on the knee he returned to work on May 28, 1988. Prior to his injury he was working an average of sixty hours per week but when he returned on May 28, 1988 he was being paid his pre-injury rate only working a forty hour week.
The Court is of the opinion that during this period of time he was being paid in lieu of workman's compensation; he was being paid for duties not performed and therefore he in essence was being paid workman's compensation under the law and that interrupted prescription. The Court finds no problem at all in the prescription being interrupted.
Accordingly, the Court hereby grants a judgment in behalf of the plaintiff in the amount of $197 per week based on his average of $262.67. His average wage the Court finds was $262.67. Therefore, the Court grants a judgment that he is entitled to a supplemental earnings benefit of $197 commencing from the date of his last check in August of 1989. Therefore, to round it out, the Court will say that the workman's compensation benefits have accrued since September 1, 1989 to this date in the amount of $197 per week with the appropriate interest on each past payment.
The Court hereby finds that the plaintiff is permanently disabled from any gainful employment right now under the applicable law and that this amount is to be paid until he can be rehabilitated.
The Court further orders that the Orleans Parish Sheriff's Office provide the proper retraining and rehabilitation to the plaintiff as per 23:1226.
Penalties and attorney fees are hereby denied by the Court. The Court doesn't feel Mr. Lambert of the Sheriff's Office acted in an arbitrary manner herein and *294 therefore will not award penalties and attorney fees.
For these reasons, there will be judgment accordingly.
The depositions that were presented to me will be made part of the record.
On appeal, the City and the Sheriff's Office raise the same specifications of error[1]:
1. The trial court erred in holding that plaintiff's injury was compensable under the Worker's Compensation Act because the injury did not arise out of his employment or occur during the course and scope of his employment.
2. The trial court erred in finding plaintiff totally disabled from engaging in any gainful employment.
3. The trial court erred in finding claimant entitled to Supplemental Earnings Benefits.
4. The trial court erred in failing to offset unemployment compensation benefits and wages earned by plaintiff against the benefits awarded.
5. The trial court erred in ordering retraining and rehabilitation.
6. The trial court erred in not finding that plaintiff had retired and in awarding benefits beyond 104 weeks in light of such retirement.

I. Compensability Under the Act
Turning to the first specification of error, defendants argue that claimant's injury fails to meet the requirements of LSA-R.S. 23:1031(A):
(A) If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated. (emphasis added).
Defendants correctly note that "course" has been defined as during the time of employment and at a place contemplated by the employment citing Robinson v. F. Strauss & Son, Inc., 481 So.2d 592 (La.1986) and Lisonbee v. Chicago Mill and Lumber Co., 278 So.2d 5 (La.1973). Defendants argue the "at a place contemplated by the employment" requirement has not been met because claimant was injured at a place where he was not supposed to be during his employment hours, specifically the basketball court located in the House of Detention.
Lieutenant Paul Davis, claimant's supervisor, Julie Langham, Comptroller of the Sheriff's Office, and Kevin Balancier, one of the participants in the basketball game who is no longer with the Sheriff's Department but is currently employed by the New Orleans Police Department, all testified that deputies were not allowed to leave the premises during their 12 hour shift and that they were only allowed to be at their duty location on the tier or in the dining room during their half hour lunch time or in the break room during their breaks. Julie Langham testified that the reason for this rule was security in case their was an emergency such as a fire or a riot in the prison requiring the presence of all deputies, including those on break. She further testified that because of this reason the Criminal Sheriff wanted to know the location of all of his on-duty deputies at all times.
Claimant Margin, Louis Martinez, Jr., a former Sheriff's Office Deputy now employed by the New Orleans Police Department, and Nathan Mark Howard, a participant in the basketball game and a former deputy now employed by Avondale Shipyards, all testified that deputies were allowed to play basketball during their lunch time and during breaks.
Louis Martinez, Jr. testified:
Q. Did you ever work with Mark Margin?
A. I workedI can't really say because I was assigned to the House of Detention in '83, and I'm not sure whether we were opposite watches. I never worked directly hand-in-hand with him on a tier or any kind of work capacity.
Q. Did Mark Margin ever tell you how he hurt himself?

*295 A. He said he was playing ball or something on the yard or whatever.
Q. But you were not present on the yard when that occurred?
A. No, sir.
Q. When you were on duty at Orleans Parish Prison, and particularly in the House of Detention or any other place, other than on your post or being sent to a place as a part of your duty and the lunch room, were you allowed any other place on the compound?
A. Yes. We were allowed to play ball at lunch time and on breaks periodically during the time I was assigned to the House of D. And the men that were assigned to that department sometimes participated with the inmates in some of their physical training activities.
* * * * * *
Q. A regular deputy was not allowed to play basketball on that court?
A. Well, we were allowed to play on lunchtime and on breaks. I can say I was.
Q. You were? Who gave you that permission?
A. I was under the watch of Henderson Lewis, who was the Lieutenant at that time. I think Warden Eddie Roberts was the warden at the House of D., and nothing was said. Guys would go after lunch, after eating lunch, and play basketball. I have done that on several occasions.
Q. You were never told that you could not play basketball while you were on lunch?
A. No, sir.
* * * * * *
Q. When you're on lunch was it particularly known by everyone there that other than being in that lunch room or on your post that you could, in fact, go to the basketball court?
A. The basketball court is in the same building as the House of D., and at that time on the day watch the cafeteria was, I guess it was a satellite cafeteria for the deputies, was in the same building as the basketball court. Guys would come out of lunch and go on the basketball court, and to my knowledge nothing was said.
Q. Was anyone ever chased off that basketball court for being there on a lunch hour?
A. I can not speak for anybody else. I know I personally was not advised not to play on the basketball court at lunchtime or on breaks. I don't recall any interoffice memos or anything. There may have been, but I do not personally recall any interoffice memos stating not to play ball at lunch time or on breaks.
Q. And no rank ever told you not to play basketball on your lunch break?
A. Under the watch of Lieutenant Henderson Lewis and SergeantI'm not sure whether it was Sergeant Roberts, but at that time nobody asked to say anything about it.
Q. Sergeant Roberts or Warden Roberts?
A. There is Sergeant Roberts, and I think he is assigned at the House of D. now.
Q. So you're talking about Sergeant Roberts, not Warden Roberts?
A. Warden Roberts also, he never said anything.
Q. Were you ever assigned to Warden Roberts' building?
A. Yes, sir, in 1983. He was over the House of D. at the time.
Claimant argues that under Freeman v. Poulan/Weed Eater, 630 So.2d 733 (La.1994) the manifest error rule applies to workers' compensation judgments and that the trial court was not manifestly erroneous in its determination that Claimant Margin, Louis Martinez, Jr., and Nathan Mark Howard were the more credible witnesses, resulting in his finding that basketball playing was allowed by the Sheriff's Office.
Even where allowed by the employer, is such recreation "arising out of" the employment such that injuries sustained during the lunch break basketball game are covered by the Workers' Compensation Act? We find that the trial court was correct in concluding *296 that the injuries were compensable under the Act.
In Blakeway v. Lefebure Corp., 393 So.2d 928 (La.App. 4 Cir.1981) writ denied 399 So.2d 610 (La.1981), this court found:
(an employee) was entitled to some reasonable recreation as a part of his employer's business of having to remain in a motel ... for two weeks during a training seminar. For him, a swim early on Sunday morning was as reasonable as sleeping at that hour or swimming in the same pool on Sunday afternoon ... the necessities of the employer's business required him to be in that motel for two weeks and included the use of the recreational facilities of that motel on a 24-hour basis. (At 930-931).
In Brown v. Flowers Baking Co., 555 So.2d 531, 532-33 (La.App. 4 Cir.1989) this court stated:
In Simmons, supra, the court considered the amount of time involved in conducting such personal affairs and concluded when the period was as short as twenty to thirty minutes it would fall in the same category as reasonable periods taken for rest, relaxation, washroom, use of tobacco, satisfying thirst, etc.
In Simmons v. Liberty Mutual Insurance Company, 185 So.2d 822 (La.App. 3 Cir.1966) the court quoted and followed:
Malone, Louisiana Workmen's Compensation Law and Practice, Section 169, makes the following pertinent observations:
`The working day embraces ... reasonable periods for rest, relaxation or the attendance of personal needs."
The trial court correctly found that the basketball game during claimant's lunch period was a period of reasonable recreation and relaxation such that the injury sustained during such reasonable recreational period was compensable under the Worker's Compensation Act.

II. Disability Finding
Defendants argue that the trial court erred in finding claimant totally disabled. The trial court stated that it found claimant has "at least a twenty-five percent permanent impairment of the function of his right lower extremity." Two doctors examined claimant, Dr. Butler and Dr. Dabezies. Dr. Butler testified "I assessed him as having a 25 percent permanent impairment and loss of function to the right lower extremity." Dr. Dabezies found "I would estimate his residual disability to be in the range of 25% loss of physical function to the knee. With this amount of disability, he can do sedentary work, but I do not think he is going to be able to do a job that requires stressful use of the knee. This would mean that he would either have to be placed at desk work or retrained for another occupation."
Although the plaintiff's injury caused him to have a 25% permanent impairment to his right knee, the medical testimony and the plaintiff's own testimony clearly established that the plaintiff was able to do sedentary work after his injury.
The plaintiff testified that he did not like to perform clerical type work; however, he admitted that he actually worked for the Sheriff's Officer performing work of a clerical nature from May, 1988 to August, 1989. Plaintiff further testified that he was able and ready to work in September of 1989. Additionally, at the trial of the case, plaintiff testified that he had worked for Domino's delivering pizzas at night for fifteen hours a week, but that he was fired. Plaintiff testified that he worked for Domino's from January of '91 to January of '92. According to the plaintiff, he only worked part time because he had to earn income to support his family. Plaintiff testified that Domino's understood he could not run and let him work at his own pace.
Plaintiff also testified that he applied for unemployment compensation and received benefits from February '90 to mid year '90. Additionally, plaintiff stated that after his unemployment compensation benefits stopped, he earned some income by repairing cars. Notwithstanding the fact that plaintiff testified that he actually worked or was able to work in 1988, 1989, 1990, 1991, and 1992, the trial court awarded plaintiff monthly benefits beginning on September 1, 1989.
Plaintiff testified to having considerable pain in his knee while working. The trial *297 court concluded that because plaintiff could only work in pain, he was entitled to receive permanent disability, stating that the case occurred before the sweeping reform legislation of 1987, hence plaintiff was covered by the old law under which working in pain equaled permanent disability. The trial court was correct in stating that this incident, which occurred on May 3, 1987, was not covered by the summer 1987 reform legislation. The particular provision relative to working in pain to which the trial court refers, however, was changed in 1983.
Prior to 1983, a plaintiff who could only work in pain was entitled to receive permanent total compensation. In 1983, the legislature amended the provisions of LSA-R.S. 23:1221(2) to provide in part as follows:
"(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not any occupation as for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.

(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(d) Notwithstanding any judgment or determination that an employee is permanently and totally disabled, if such employee subsequently has or receives any earnings, including, but not limited to, earnings from odd-lot employment, sheltered employment, or employment while working in any pain, such employee shall not receive benefits pursuant to this Paragraph, but may receive benefits computed pursuant to Paragraph (3) of this Section, if applicable." (emphasis added).
In Whatley v. Hartford Acc. & Indem. Co., 509 So.2d 671 (La.App. 3rd Cir.), writ denied, 512 So.2d 441 (La.1987), the court correctly interpreted the effect of the 1983 amendments when it stated:
The legislature has made it clear that even if plaintiff is in pain, he must work unless he proves by clear and convincing evidence that he is physically unable to engage in any employment or self-employment as described in LSA-R.S. 23:1221(2)(c).
"Arguments that the employee is working in pain, or would have to work in pain, after his injury will have greatly reduced importance after the 1983 amendments. This was clearly the intendment of the amended provisions.
In a total and permanent disability argument, pain will now have no role to play at all. The fact that an employee can work but only in substantial pain will not make him totally disabled, since he must prove that there is no job he can do, even in `any' pain."
Malone & Johnson, Louisiana Civil Law TreatiseWorker's Compensation § 277 (Supp.1987)
Id. at 676.
Pursuant to the 1983 amendments, a worker who continues to work even though in pain is not entitled to permanent total disability *298 benefits. A worker who continues to work in pain can only receive supplemental earnings benefits. Newman v. Louise S. Davis Dev. Center, 598 So.2d 1208 (La.App. 4th Cir. 1992).
The plaintiff was injured on May 3, 1987, and was able to perform work after that date. Accordingly, he is not entitled to receive permanent total disability benefits. Although we may question the wisdom of precluding such workers from receiving permanent total benefits, it is not within our prerogative to disregard the mandates of the legislature.

III. Supplemental Earnings Benefits
R.S. 23:1221(3)(a) as amended by Acts 1985, No. 926 § 1, effective January 1, 1986 provides:
For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment ... (emphasis added).
The trial judge concluded that claimant was permanently disabled and incapable of earning any wages, a conclusion with which this court disagrees. The trial court correctly found that claimants pre-injury wage was $262.67. On the basis of its ruling on permanent disability, the trial court found that the claimant was unable to earn monthly wages, hence the trial court applied the formula $262.67 minus "average monthly wages the employee is able to earn" which the trial court concluded was minus $ 0.00 equals x and x times 75% equals supplemental earnings benefit. Because this court finds that plaintiff is capable of and in fact did earn monthly wages, the correct formula is $262.67 minus "average monthly wages earned or average monthly wages the employee is able to earn (greater than zero)" equals x.
Because the record does not contain sufficient information to determine the wages actually earned by the plaintiff while he was working in pain and/or plaintiff's earning capacity, we remand the case for a hearing and evidence on this issue and order the trial court to recompute the amount due as supplemental earnings benefit.
We further note that the trial court erroneously applied the formula in effect prior to the amendment effective January 1, 1986, namely $262.67 minus 0.00 equals x and x times 75% equals $197.00, in arriving at its award. The correct formula is $262.67 minus "average monthly wages earned or average monthly wages the employee is able to earn (greater than zero)" equals x and x times 66.66% equals supplemental earnings benefit. Thus the formula to be applied by the trial court on remand is $262.67 minus "average monthly wages earned or average monthly wages the employee is able to earn (greater than zero)" equals x and x times 66.66% equals the supplemental earnings benefit to which plaintiff is entitled.

IV. Offset of Other Benefits
Defendants argue that the trial court erred in failing to setoff the Domino's wages and unemployment benefits received by claimant against any worker's compensation benefits that they may owe. Setoff is an affirmative defense which must be specifically pled in the defendant's answer. C.C.P. Art. 1005. Defendants failed to so plead and cannot now raise it as an issue.

V. Retraining and Rehabilitation
LSA R.S. 23:1226 provides:
When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
Because the record does not contain sufficient information to determine whether the employee has or is capable of earning wages equal to wages earned prior to the injury, we remand the case for a hearing and evidence on this issue and order the trial court to decide this issue.

*299 VI. Retirement

Defendants argue that claimant's current lack of employment because of his injury is "retirement" under R.S. 23:1221 which terminates supplemental earnings benefits upon retirement. The retirement contemplated therein clearly refers to retirement based upon age and/or years of service which results in a pension of some type and does not refer to unemployment as a result of an employment injury under Worker's Compensation.
For the reasons discussed, the judgment of the district court is affirmed in part, reversed in part and remanded.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] The prescription issue has not been briefed and thus has been abandoned on appeal.