# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 16-93

HEATHER LYNN CARMICHAEL

VERSUS

RAY BRADLEY BROOKS

************

**APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, DOCKET NO. 12-C-0845-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE**

************

**JAMES T. GENOVESE
JUDGE**

************

Court composed of John D. Saunders, Billy Howard Ezell, and James T. Genovese, Judges.

**AFFIRMED AS AMENDED IN PART;
REVERSED IN PART; VACATED IN PART;
RENDERED; AND, REMANDED.**

Alisa Ardoin Gothreaux
Alisa Ardoin Gothreaux, LLC
Post Office Box 10
Opelousas, Louisiana 70571-0010
(337) 942-9771
COUNSEL FOR DEFENDANT/APPELLANT/APPELLEE:
    Ray Bradley Brooks

**Jack Derrick Miller**
**(A Professional Corporation)**
**415 North Parkerson Avenue**
**Crowley, Louisiana 70527-1650**
**(337) 788-0768**
**COUNSEL FOR PLAINTIFF/APPELLEE/APPELLANT:**
**Heather Lynn Carmichael**

**GENOVESE, Judge.**

In this action to partition their community property, both Plaintiff, Heather Lynn Carmichael, and Defendant, Ray Bradley Brooks, appeal the trial court's judgment dividing their community property. For the following reasons, we affirm as amended in part, reverse in part, vacate in part, render, and remand.

## FACTS AND PROCEDURAL HISTORY

Heather and Ray were married on June 23, 2000. Heather filed a petition for divorce on February 24, 2011;[1] thereafter, the parties reconciled, and the petition was abandoned. A second petition for divorce was filed on February 13, 2012,[2] and a final judgment of divorce was rendered September 14, 2012. The ancillary partition of community property was tried on June 30, 2015, and the trial court rendered Reasons for Judgment on July 1, 2015. A concomitant Judgment of Partition was signed on November 23, 2015. From said judgment, Ray appeals and Heather has answered the appeal.

## ASSIGNMENTS OF ERROR

Ray presents the following assignments of error for our review:

1. The [t]rial [c]ourt committed manifest and reversible error when it applied La.R.S. 9:2801.1 to require [Ray] to pay [Heather] $22,000.00 as an equitable assessment against his [s]ocial [s]ecurity benefits where no equitable arguments or evidence was adduced to justify the award.

2. The trial court commited legal, manifest error when it applied La.R.S. 9:2801.1 to award [Heather] an offset against [Ray's] [s]ocial [s]ecurity benefits without proof of community.

---

[1]That matter was assigned docket number 11-C-0929-C in the trial court.

[2]When filed, the trial court assigned this petition a new docket number, 12-C-0845-C. The parties then filed a Joint Motion to Transfer Proceedings, and docket number 11-C-0929-C was transferred into docket number 12-C-0845-C.

3. The [t]rial [c]ourt committed manifest, reversible error when it assessed a $22,000.00 [s]ocial [s]ecurity offset in favor of [Heather] relying on vague and unreliable expert testimony.

4. The [t]rial [c]ourt's ruling as applied to [Ray] result[s] in manifest, reversible error and is pre-empted by the Supremacy Clause of the U.S. Constitution, art. VI, cl. 2, in that his duplicative, inequitable award of [s]ocial [s]ecurity benefits does major damage to clear and substantial federal interests.

5. The Judgment of Partition executed by [Heather] and signed by the trial court [is] vague, ambiguous and incomplete where it fails to itemize and clearly identify those items and allocated sums to support the ultimate calculation establishing that [Heather] owes $1[,]126.70 to [Ray].

Additionally, Heather presents the following assignments of error for our review:

1. The trial court did not apply the correct law and/or committed manifest error in determining a rental value on the parties' former community home when there was no valid claim for rent and where no expert or other competent evidence was introduced to establish such value, effectively preventing [Heather] from any meaningful cross-examination of this issue.

2. The trial court did not apply the correct law and/or committed manifest error by ignoring the stipulations of the parties, which placed values on the "unclaimed items," and by providing its own value of said items.

3. The trial court did not apply the correct law and/or committed manifest error by determining that [Heather] had to account for and reimburse [Ray] for sums she withdrew out of a community account approximately one-half year prior to the petition for divorce being filed, as well as incorrectly calculating any amount due [Ray] even if [Heather] had to reimburse him.

4. The [trial] court awarded [Ray] a one-half interest in the Edward Jones IRA, account number XXX-X6515-1-3, in the absence of any evidence or stipulation and without granting to [Heather] an equal share of that account.

2

<u>**LAW AND DISCUSSION**</u>

**RAY BRADLEY BROOKS' APPEAL**

The trial court, after considering the evidence, including expert witness testimony, concluded that the average amount of Ray's social security benefits would be $44,000.00. Pursuant to La.R.S. 9:2801.1, the trial court granted Heather a credit of $22,000.00, representing one-half of this amount. In his first four assignments of error, Ray contends this award, and the amount thereof, constitute errors on the part of the trial court. For the reasons that follow, we find no abuse of the trial court's discretion in making the award or the valuation thereof.[3] *Bhati v. Bhati*, 09-1030 (La.App. 3 Cir. 3/10/10), 32 So.3d 1107; *Comeaux v. Comeaux*, 08-1330 (La.App. 3 Cir. 4/1/09), 7 So.3d 110.

"The determination whether a former spouse's social security benefits are community property is preempted by federal law. U.S. Const. art. VI, cl. 2; 42 U.S.C. § 407 (2002);[4] and *Young v. Young*, 06-77 (La.App. 3 Cir. 5/31/06), 931

---

[3]Ray urges this court to conduct a de novo review of the record due to "manifest, legal error[.]" We find no such error by the trial court warranting a de novo review by this court.

[4]42 U.S.C. § 407 provides as follows:

**(a) In general**

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

**(b) Amendment of section**

No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

**(c) Withholding of taxes**

Nothing in this section shall be construed to prohibit withholding taxes from any benefit under this subchapter, if such withholding is done

So.2d 541." *Comeaux*, 7 So.3d at 113.  However, in actions for the partition of community property in Louisiana, the provisions of federal law must be considered in conjunction with state law, La.R.S. 9:2801.1, which provides as follows:

> When federal law or the provisions of a statutory pension or retirement plan, state or federal, preempt or preclude community classification of property that would have been classified as community property under the principles of the Civil Code, the spouse of the person entitled to such property shall be allocated or assigned the ownership of community property equal in value to such property prior to the division of the rest of the community property. Nevertheless, if such property consists of a spouse's right to receive social security benefits or the benefits themselves, then the court in its discretion may allocate or assign other community property equal in value to the other spouse.

Therefore, although federal law preempts the classification of property pursuant to La.R.S. 9:2801.1, "a trial court is granted discretion to choose whether to award a spouse additional community assets as compensation for the right to receive social security benefits, or the benefits themselves, of the other spouse when those benefits would otherwise be classified as community property but for federal preemption." *Bhati*, 32 So.3d at 1111.

Ray contends on appeal that the trial court's award granting Heather an offset of his social security benefits is inequitable.  On this issue, both parties refer this court to the relatively few appellate decisions addressing the application of La.R.S. 9:2801.1 in support of their respective positions.  In the prior decisions of this court recognizing the discretion expressly given to the trial court by statute, we have not found an abuse of discretion by the trial court in declining to "allocate or assign other community property equal in value to the other spouse[;]" nor, conversely, in exercising its discretion and making such an allocation as was done

pursuant to a request made in accordance with section 3402(p)(1) of the Internal Revenue Code of 1986 [26 U.S.C.A. § 3402] by the person entitled to such benefit or such person's representative payee.

4

in the case at bar. *Id.* (*See* for example, *Comeaux*, 7 So.3d 110, wherein we affirmed a trial court's award of community property in an amount equal in value to social security benefits of the other spouse; *Bhati*, 32 So.3d 1107, wherein we affirmed the trial court's decision denying the wife compensation for her husband's social security benefits; and, *Williams v. Williams*, 12-732 (La.App. 3 Cir. 12/5/12), 104 So.3d 760, which was an affirmation by this court of the trial court's refusal to make such an allocation in favor of the wife.)

With respect to the instant matter, we are not persuaded by Ray's equitable argument. Federal law preempts the classification of social security benefits as community property, but it does not prohibit an assignment of property equal in value to the amount of social security benefits. 42 U.S.C.A. § 407. Louisiana Revised Statutes 9:2801.1 is not in contravention of federal law. Rather, its enactment simply allows a trial court, depending upon the facts and circumstances of the community property regime, to provide a spouse an offset in an amount equal to that of the social security benefits, when doing so would be equitable and in furtherance of Louisiana's community property laws. We agree with Heather that there is an "inequity of [Ray] receiving much more than one-half of the [s]ocial [s]ecurity benefits available to the parties[,]" and that the state statute, La.R.S. 9:2801.1, allowing for an offset equal in value, is in fact enacted for the purpose of achieving an equitable result.

Ray also complains that the trial court's application of La.R.S. 9:2801.1 was erroneous since "[t]he parties argued and the judge ruled upon only several discreet issues; he did not adjudicate nor evaluate the entirely [sic] of the community property." We agree with Ray that not all of the community property was divided by the trial court as evidenced by the trial court's instruction to the attorneys to

5

"crunch and compare the numbers." However, the ultimate division of those additional items does not preclude a resolution of the issues pertaining to the social security benefits. There was ample proof relative to the issue of social security benefits. The trial court did not err in adjudicating Heather's entitlement to the offset and reaching a decision on the valuation and amount thereof. The amount of the offset to which Heather is entitled, being established at $22,000.00, is to be accounted for when the division of the remaining items is accomplished.

Finally, with respect to Heather's entitlement to an offset of social security benefits, Ray argues the trial court's ruling "is pre-empted by the Supremacy Clause of the U.S. Constitution, art. VI, cl. 2," and that "the trial court's application of La.R.S. 9:2801.1 does 'major damage' to 'clear and substantial federal interests'" in that it treats his social security benefits as community property. We likewise find no merit to this contention. As stated above, La.R.S. 9:2801.1 does not classify social security benefits as community property in contravention of federal law. To the contrary, it merely provides for a discretionary equitable offset.

We have considered the evidence and the specific facts in the matter before us. Considering the record as a whole, and with due deference to the trial court, we do not find that the trial court abused its discretion in this case in granting Heather a credit equal in value to one-half of the Ray's social security benefits.

Ray next complains that the trial court erroneously relied on "vague and unreliable expert testimony" in reaching its conclusion on the value of the social security benefits at issue. Mr. Stacey Singleton, accepted as an expert certified public accountant and certified evaluation analyst, was the only witness to testify. He provided the trial court with an analysis and calculation on the valuation of the

6

social security benefits. Ray characterizes Mr. Singleton's valuations as "utter guesswork[.]" We disagree.

Mr. Singleton explained that he had reviewed the criteria for social security benefits and the estimated benefits statements and earnings records of both parties in order to ascertain the amounts that Heather and Ray had each contributed in making his projections. Additionally, he obtained life expectancy figures from the Louisiana Department of Revenue to factor in the average life span of Louisiana residents in his analysis. Mr. Singleton explained that the source of the discount rate used in his computations in order to compute the present value of the funds was the twenty-year U.S. Treasury rate. The trial court then considered the present value of the benefits and granted Heather an offset of one-half of that amount toward the community property partition.

While it is true that Mr. Singleton's calculations were based on differing "probabilities,"[5] the record establishes that Mr. Singleton considered different scenarios and made several calculations factoring in the possibility of the remarriage of either Ray or Heather and differing potential retirement ages. Using averages of the results to account for these variations, Mr. Singleton testified that based upon "what we know and what we have[,]" $44,095.00 is the present day valuation of Ray's social security benefits.

> It is well settled in Louisiana that the trier of fact is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. The trier of fact may accept or reject in whole or in part the opinion expressed by an expert. *Harris v. State ex rel. Dept. of Transp. and Development*, 2007-1566, p. 25 (La.App. 1 Cir. 11/10/08), 997 So.2d 849, 866, *writ denied*, 2008-2886 (La.2/6/09), 999 So.2d 785. The effect and weight to be given expert testimony is within the broad discretion of the trial court. *Morgan v.*

---

[5]Mr. Singleton testified that variables, such as the amount of a party's earnings, could change over time, and some relevant information, such as dates of retirement and the possibility of a party remarrying, cannot be definitively known at this point.

7

> *State Farm Fire and Cas. Co., Inc.*, 2007-0334, p. 8 (La.App.11/2/07), 978 So.2d 941, 946. The decision reached by the trial court regarding expert testimony will not be disturbed on appeal absent a finding that the trial court abused its discretion. *Louisiana State Bar Ass'n v. Carr and Associates, Inc.*, 2008-2114, p. 17 (La.App. 1 Cir. 5/8/09), 15 So.3d 158, 171, *writ denied*, 2009-1627 (La.10/30/09), 21 So.3d 292.

*Trahan v. Trahan*, 10-109, p. 12 (La.App. 1 Cir. 6/11/10), 43 So.3d 218, 228-29, *writ denied*, 10-2014 (La. 11/12/10), 49 So.3d 889.

In its Reasons for Judgment, the trial court acknowledged that "Mr. Singleton considered many factors in this case" and expressed that the "issue" it had with the calculations was "that a lot of probabilities were taken into consideration." Ultimately, however, the trial court accepted Mr. Singleton's calculation, which it rounded off to $44,000.00. Based upon this figure, the trial court "granted a credit of social security benefits toward the community in the sum of $22,000[,]" one-half of this amount. Considering the evidence and Mr. Singleton's testimony, we find no abuse of discretion by the trial court in accepting Mr. Singleton's valuations in this case and find no merit to Ray's assignments of error pertaining to the social security benefits' offset granted by the trial court.

For the foregoing reasons, we find no error in the trial court's ruling relative to Heather's entitlement to an offset of one-half of the social security benefits, nor the valuation placed on these benefits by the trial court. We, therefore, affirm that portion of the trial court's judgment granting Heather a "$22,000.00 offset, relative to the [s]ocial [s]ecurity benefits of [Ray.]"

In his final assignment of error, Ray asserts that the trial court's judgment "fails to itemize and clearly identify those items and allocated sums to support the ultimate calculation establishing that [Heather] owes $1[,]126.70 to [Ray]." This assignment of error has merit.

We agree with Ray that it is "impossible to glean precisely all the amounts assessed in the totality to reach the final conclusory statement that [Heather] simply owes [Ray] $1,126.70." Neither the trial court's Reasons for Judgment nor the Judgment of Partition provide an explanation as to how the trial court made this calculation. Notably, the Reasons for Judgment expressly conclude with: "The court also orders the lawyers to get together to crunch and compare the numbers and figures ordered by this court in order to partition the community." Undisputedly, a division of the entirety of the parties' community property was not completed at the hearing. The discourse between the trial court and counsel at the conclusion of the hearing reflects this. Both attorneys acknowledged that once the trial court made a determination of what inequity remained upon complete resolution of the matters, they would calculate the amount owed and by which party it is owed. This net amount is subject to the conclusions reached by this court, as well as the remaining community property not yet divided; thus, it is yet indeterminable.

Therefore, a remand of this matter is necessary for a division of the remaining assets. Only after that is done can the figures be determined with definitiveness such that the trial court may make a final calculation of the actual amount owed and by which party. We, therefore, reverse that portion of the trial court's judgment decreeing that Heather owes Ray $1,126.70, and we remand the matter to the trial court for a final disposition upon the division of the remaining community property of the parties.

**HEATHER LYNN CARMICHAEL'S ANSWER TO APPEAL**

In her answer to appeal, Heather argues that the trial court erred in awarding Ray a $1,000.00 per month rental value for her use of the family home.

Initially, the parties disagreed on whether Ray asserted a rental claim in these proceedings. Additionally, Heather argues on appeal that even assuming that a rental claim was properly asserted, Ray did not meet his burden of proving the value of the claim for rent. We agree in part.

The trial court's Reasons for Judgment reflect that "the [trial] court looked at the photos of the home that included a large metal shop and cover." Additionally, the court opined that "[i]t is a nice home" with an appraised value of $105,000.00. Lastly, after acknowledging that "the road heading to the home [does] flood at times[,]" the trial court expressly considered not only the "condition of the home" but also "the rental market in this area" in reaching its conclusion.

Undisputedly, the appraised value of the home and property subject to the rental claim was $105,000.00. Additionally, photographs of the property were introduced, and a verbal description of the property was provided by Ray. However, there was no expert testimony, nor any other competent evidence, for a determination to be made by the trial court on the rental value of the home. The only person to testify on this issue was Ray. Notably, over a hearsay objection by Heather's counsel,[6] Ray testified as to the amount of rent being charged on two homes in the vicinity of the subject property based on what a friend told him. Even if his testimony, which was inadmissible hearsay evidence, was properly considered by the trial court, there was no evidence of any details such as the size and condition of the other properties.

---

[6]Ray admitted that the source of his knowledge as to the amount of rent being charged on other homes in the vicinity of the subject family home was from out-of-court discussions with the property owner.

This court considered a rental claim in *Otterstatter v. Otterstatter*, 99-1481, p. 3 (La.App. 3 Cir. 3/1/00), 758 So.2d 298, 300, finding that the testimony of a spouse who admitted that she "never tried to rent the house and really does not know how much it would rent for" was insufficient proof for a rental claim. Therein, we noted that "[t]here was no evidence" that the spouse had "particular experience or expertise in real estate rentals[;]" thus, "the award based on such speculation was erroneous." *Id.*

Similarly, in *Cutting v. Cutting*, 625 So.2d 1112, 1118, (La.App. 3 Cir. 10/6/93), *writ denied*, 631 So.2d 453 (La.1994), this court affirmed a trial court's judgment wherein we opined that "[t]he trial court apparently concluded that the estimated rental value was merely speculative." Notably, in that case, the evidence included the testimony of an expert appraiser who, despite admitting that he was "not familiar with the rental areas[,]then provided the trial court with a particular value." *Id.*

Lastly, in *Hoover v. Hoover*, 10-1245 (La.App. 1 Cir. 3/17/11), 62 So.3d 765, the first circuit found evidence for a rental claim to be insufficient. In that case, a spouse testified as to the description of the home, but the trial court did "not allow her to testify as to the fair market rental value." *Id.* at 769. A property appraisal was introduced; however, "[n]o evidence regarding the rental value of the house was offered or introduced." *Id.* In reaching its valuation, the trial court stated that it considered "the size of the home and just [the court's] judgment" to determine what the court deemed "reasonable." *Id.*

In the instant mater, Ray contends that there was adequate evidence for the trial court's determination of an appropriate rental value. Alternatively, relying on *Hoover*, 62 So.3d 765, he urges this court to remand "for a determination of the

fair market rental value of the home and therefore a determination of the appropriate rental reimbursement." *Id.* at 769-70. Though we agree with Ray that he is entitled to a rental reimbursement, we find that there is insufficient competent evidence presented for a determination of an appropriate rental value. Therefore, we vacate that portion of trial court's judgment awarding Ray "$18,000.00, representing one-half rental value of [their] former community home," and we remand the matter to the trial court for a hearing to determine the appropriate value of this rental claim.

In her second assignment of error, Heather asserts that the trial court erred in disregarding the stipulation of the parties on the value of what the parties refer to as "unclaimed items." We agree.

Introduced as a joint exhibit of the parties was a list of these unclaimed items. This list had been assigned a value by an appraiser and which was the subject of a stipulation of the parties in June 2015. Following the hearing, the trial court concluded that Ray was in possession of the majority of the unclaimed items and allocated a value of these items to him.[7] However, in her Answer to Appeal, Heather asserts that the valuation placed upon the unclaimed items by the trial court was in error. We agree.

On appeal, Heather argues that "[t]he parties were able to enter into a stipulation with regard to the value of those items[,] and, because [Ray] had possession of these items[,] the [trial] court allocated all of them to him, but at different values than those that were agreed upon by stipulation." The record reflects that the stipulation as to the value of the unclaimed items was $5,890.00.

---

[7]The trial court did acknowledge that there were items Ray claimed that he did not possess; however, the value of those items was de minimis, and it was not presented as an error on appeal.

12

Despite this stipulation, the trial court assigned a value of $2,000.00.  We find this valuation unfounded and in direct contravention of the stipulation of the parties.

At the hearing, the trial court acknowledged the stipulation of the parties as to the appraised value of the unclaimed items, but stated that he did not "have to accept those numbers."  Counsel for Ray advised the trial court that there was a stipulation as to the appraised values but "[n]ot to how much was owed on him [sic] and what [the trial court would] do with the amounts that [he] owed."[8]  Ray argues on appeal that "the stipulation was simply to save the expense of having the appraiser testify" and that there was no error by the trial court considering the "degradation of the unclaimed items when they were finally received by [him]."

We agree that a trial court is generally free to accept or reject expert testimony.  *Trahan*, 43 So.3d 218.  Notably, however, in this case, the value of the unclaimed items as determined by the appraiser became the subject of a stipulation. Although Ray asserts that the stipulation agreed upon was that these were the values that the appraiser had assigned, and further suggests that he is not now held to the appraised values, we disagree.

The record contains Pretrial Stipulations of the parties of June 1, 2015.  The stipulation states that "[n]either party desires to be allocated the assets listed on Appendix F, totaling $5,890.00.  These items will have to be allocated/divided by the [trial] court."  The stipulation is not limited in any manner.  Rather, only the division of the assets is what is expressly reserved to the trial court for

---

[8]Elsewhere in the transcript, the stipulation is further discussed, and the distinction sought to be made by counsel is not readily discernable by the language used.  For example, when the trial court asked counsel if the unclaimed items were still at issue, counsel for Ray, on occasion, responded:  "Who you're going to give em [sic] to is basically it."  In fact, during Ray's testimony, he was asked if the unclaimed items had been appraised and values assigned to them. Not only did Ray responded affirmatively, but his counsel then referred the court to the exhibit that he represented as being "part of the stipulation."

13

adjudication. Accordingly, the limited issue which remained before the trial court was the allocation of the unclaimed items, not the valuation thereof.

The agreement between Ray and Heather via stipulation as to these items of community property "constitute[s] a binding compromise." *Catalanotto v. Catalanotto*, 14-708, p. 4 (La.App. 1 Cir. 12/10/14), 168 So.3d 463, 466 (citing *Guidry v. Blanchard*, 13-1095 (La.App. 3 Cir. 3/5/14), 134 So.3d 182 (child support); *Thomas v. Williams*, 48,003 (La.App. 2 Cir. 5/15/13), 115 So.3d 715 (child support); *Reon v. Reon*, 07-1277 (La.App. 3 Cir. 4/2/08), 982 So.2d 210 (community property); and, *Carlin v. Wallace*, 00-2892 (La.App. 1 Cir. 9/28/01), 809 So.2d 1017 (community property)). Additionally, the result of such a compromise is to settle a dispute between the parties, and, while "[a] compromise settles only those differences that the parties clearly intended to settle," it also includes "the necessary consequences of what they express." *Id.*[9]

Therefore, we find that the trial court was not at liberty, as suggested by Ray, to weigh the credibility of the witnesses and consider other evidence on this issue. The stipulation on the value of the unclaimed items was binding upon the parties, and the trial court was without authority to disregard these valuations and substitute its own valuations. Thus, we find that the trial court erred in valuing the unclaimed items at $2,000.00. We, therefore, affirm the trial court's allotment of the unclaimed items to Ray, but we amend the judgment of the trial court to reflect the value of said items to be $5,890.00.

In her third assignment of error, Heather asserts that the trial court erred in determining that she was required to reimburse Ray for community funds that she

---

[9]Pursuant to La.Civ.Code art. 3082, the grounds for rescission of a compromise agreement include "error, fraud, and other grounds for the annulment of contracts[,]" none of which are asserted in the present appeal.

14

withdrew prior to the filing of the petition for divorce. Alternatively, she contends that the trial court made an incorrect calculation as to the amount of the reimbursement owed. We find no merit in this assignment of error.

The claim for reimbursement arose as a result of improvements to the family home that were instituted after the first petition for divorce was filed. To facilitate these improvements, Heather withdrew $23,891.34 from community accounts. This withdrawal is undisputed. Also undisputed is the amount of the original contract price of $24,876.00 for said improvements, as well as the fact that there were subsequent "add-ons" which were not included in the original contract.

The trial court considered the testimony and evidence of both parties concerning the use of the $23,891.34 in community funds to determine if Heather owed reimbursement. According to Heather, when the construction contract was originally signed, a payment of $12,500.00 was made with cash from the $23,891.00 withdrawal. Ray denied that the down payment was made in this manner; instead, he testified that it was he who made the payment towards the contract via checks.[10] The trial court also considered evidence on the additional improvements that were done, including the cost and manner of payment thereof in an effort to "trace" the $23,891.34.

Having considered the conflicting evidence on this issue, the trial court's Reasons for Judgment set forth the following findings:

> As to the funds withdrawn by [Heather] from the Edward Jones account in the sums of $23,891.34, the court finds that $12,500[.00] was used by [Heather] to pay cash to the contractor for the improvements made to the community home.
>
> . . . .

---

[10]In its Reasons for Judgment, the trial court found that Ray's payments for the improvements were $17,050.00.

Considering that testimony that this court heard with regards to the Edward Jones fund, the court finds that [Heather] did not use all of the funds for the benefit of the community[,] and[,] therefore, [Ray] get [sic] a credit of $6,500[.00] towards the community property partition.

Based upon our review of the record, we find no error in the trial court's conclusion that Ray is entitled to a credit toward the community property partition. The evidence established that Heather withdrew community funds of $23,891.34. Additionally, Heather's testimony, as well as the hand-written notation on the construction contract itself, support the conclusion that $12,500.00 of these funds was used as a down payment, which yielded a remaining amount of $11,391.34. Thus, we find no merit to Heather's assertion that Ray was not entitled to a credit toward the community property partition.

Alternatively, Heather asserts that assuming Ray is entitled to a credit, the trial court made an incorrect calculation of the amount of the reimbursement owed and that the correct "amount is $5,695.67, not $6,500.00 as granted by the trial court." Addressing this contention requires a review of the Reasons for Judgment and the Judgment of Partition.

Initially, we note discrepancies between the Reasons for Judgment and the Judgment of Partition. Although the Reasons for Judgment state that "[Ray] get [sic] a credit of $6,500[.00] towards the community property partition[,]" the corresponding language of the Judgment of Partition identifies Ray's award as "$5,695.67, representing monies withdrawn by [Heather] from [the] Edward Jones account[.]" It is not ascertainable how the trial court calculated the credit of $6,500.00 in its Reasons for Judgment; however, that is of no consequence as "'[a]ppeals are taken from the judgment, not the reasons for judgment.'" *Winbery*

*v. La. College*, 13-339, p. 9 (La.App. 3 Cir. 11/6/13), 124 So.3d 1212, 1217, *writs denied*, 13-2844, 13-2859 (La. 4/11/14), 137 So.3d 1215 (quoting *Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586, p. 77 (La. 4/1/11), 61 So.3d 507, 572). The award in the judgment itself is readily ascertainable as the result of the initial withdrawal from the community account of $23,891.34 less the down payment of $12,500.00, which yields $11,391.34, which the trial court then divided equally to arrive at the $5,695.67 figure in the judgment.

Therefore, although Heather asks this court to reverse the trial court and reduce Ray's claim in reimbursement to $0.00, or alternatively, to amend the credit granted by the trial court, that is not necessary as there is no error in the Judgment of Partition. For the foregoing reasons, we affirm that portion of the trial court's judgment decreeing that the value of Ray's reimbursement claim for the community funds which Heather withdrew from the Edward Jones account to be $5,695.67.

In her final assignment of error, Heather contends that the trial court erred in awarding Ray "a one-half interest in the Edward Jones IRA, account number XXX-X6515-1-3, in the absence of any evidence or stipulation and without granting to [Heather] an equal share of that account." We agree.

The Judgment of Partition includes a decree that Ray is awarded a "[o]ne-half interest in Edward Jones IRA, account number XXX-X6515-1-3." There is, however, no equivalent or reciprocal decree of one half of this account to Heather. The inclusion of this account in the Judgment of Partition reflects that it was a community asset to be divided, and neither party argues on appeal to the contrary. Accordingly, in order to render a judgment in this community property matter

17

"which is just, legal, and proper upon the record on appeal[,]"[11] we render judgment herein in favor of Heather for a one-half interest in the Edward Jones IRA, account number XXX-X6515-1-3. La.Code Civ.P. art. 2164.

## DECREE

For the reasons set forth herein, we affirm those portions of the trial court's judgment granting Heather Lynn Carmichael a $22,000.00 offset relative to Ray Bradley Brooks' social security benefits and decreeing the value of Ray Bradley Brooks' reimbursement claim for the community funds withdrawn by Heather Lynn Carmichael from the Edward Jones account to be $5,695.67. That portion of the trial court's judgment allotting the unclaimed items to Ray Bradley Brooks is also affirmed, but we amend the judgment to decree the value of said items to be $5,890.00. We reverse that portion of the trial court's judgment decreeing that Heather Lynn Carmichael owes Ray Bradley Brooks $1,126.70, and we remand this matter for a final disposition upon the division of the remaining community property of the parties. Additionally, we vacate that portion of trial court's judgment awarding Ray Bradley Brooks $18,000.00, representing one-half of the rental value of the former community home, and we remand the matter to the trial court for a hearing to determine the appropriate value of this rental claim. Finally, we render judgment herein in favor of Heather Lynn Carmichael for a one-half

---

[11]Louisiana Code of Civil Procedure Article 2164 provides:

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

18

interest in the Edward Jones IRA, account number XXX-X6515-1-3.  Costs of this

appeal are assessed to equally between the parties.

**AFFIRMED AS AMENDED IN PART;
REVERSED IN PART; VACATED IN PART;
RENDERED; AND, REMANDED.**