# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-171

LYMAN L. SMITH

VERSUS

PACKAGING CORPORATION OF AMERICA

**********

ON APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT # 03
PARISH OF CALCASIEU, NO. 18-02518
HONORABLE MELISSA ST.MARY,
WORKERS' COMPENSATION JUDGE

*********

**JONATHAN W. PERRY**
**JUDGE**

*********

Court composed of Billy Howard Ezell, Jonathan W. Perry, and Gary J. Ortego, Judges.

**AFFIRMED.**

Phillip E. Foco
Bienvenu, Bonnecaze, Foco & Viator, LLC
4210 Bluebonnet Blve.
Baton Rouge, Louisiana 70809
(225) 388-5600
**COUNSEL FOR EMPLOYER/APPELLANT**:
      Packaging Corporation of America

Max Malvin
Malvin Law, LLC
201 St. Charles Ave., Suite 2500
New Orleans, Louisiana 70170
(504) 383-0895
**COUNSEL FOR EMPLOYER/APPELLANT**:
      Packaging Corporation of America

Thomas A. Filo
Cox, Cox, Filo, Camel & Wilson, L.L.C.
723 Broad Street
Lake Charles, Louisiana 70601
(337) 436-6611
**COUNSEL FOR CLAIMANT/APPELLEE**:
      Lyman L. Smith

**PERRY, Judge.**

In this workers' compensation case, the issue before us is whether a former employee can claim and receive supplemental earnings benefits ("SEBs") after retirement, even if the employee admitted his retirement was an independent decision and not related to the workplace injury.

## FACTS AND PROCEDURAL HISTORY

The employment of Lyman L. Smith ("Mr. Smith") in the paper mills began on March 29, 1974, when, at the age of twenty, he worked for Boise Cascade, the predecessor of Packaging Corporation of America ("PCA").[1] On January 1, 2017, at the age of sixty-two, Mr. Smith retired from PCA after working almost forty-three years as a paper maker, operating paper machines. On April 23, 2018, Mr. Smith filed a workers' compensation claim against his former employer, PCA, seeking benefits related to occupationally induced hearing loss resulting from his employment at PCA's paper mill located in DeRidder. On September 19, 2018, Dr. Brad LeBert ("Dr. LeBert"), Mr. Smith's choice of treating physicians, opined that Mr. Smith had occupationally related noise induced hearing loss because of his work at the paper mill and restricted his work within National Institute for Occupational Safety and Health ("NIOSH") compliant environments. Mr. Smith also made formal demands on PCA on May 21, 2018 and September 19, 2018, seeking medical benefits, including audiograms and hearing aids, vocational rehabilitation, and SEBs.

The Workers' Compensation Judge ("WCJ") found that Mr. Smith satisfied his burden of proving by a preponderance of the evidence that his hearing loss was the result of his exposure to high noise levels over the length of his employment with

---

[1] Although Boise Cascade employed Mr. Smith during most of his employment at the paper mill, it and PCA stipulated that PCA is liable for all workers' compensation obligations that may be owed to Mr. Smith.

PCA. Accordingly, it determined that Mr. Smith was entitled to medical and indemnity benefits. The court further found Mr. Smith was entitled to an SEB award because he was unable to earn at least 90% of his pre-accident wages and the work-related noise restrictions, his age, level of education, and his work career limited him to the specific type of work he performed at PCA. The WCJ also found that PCA failed to carry its burden to establish jobs available to its former employee that he could perform within the medical restrictions, particularly one that would pay him 90% or more of his pre-accident wages, and that PCA never offered him a modified position and any vocational rehabilitation services. However, because Mr. Smith had retired, the WCJ limited his SEB award to 104 weeks in accordance with La.R.S. 23:1221(3)(d)(iii).

Finally, the WCJ awarded Mr. Smith penalties of $8,000.00 and attorney fees of $15,000.00 because PCA failed to reasonably controvert the claim and was arbitrary and capricious in handling the claim. Later, in an amended judgment, the WCJ determined that PCA was entitled to a credit of $30,000.00 because of a prior tort settlement in 2013 involving alleged hearing loss;[2] thus, it determined that PCA only owed Mr. Smith $61,328.00.

PCA suspensively appealed the decision of the WCJ which awarded Mr. Smith medical benefits, SEBs, penalties, and attorney fees for hearing loss caused by his employment. Mr. Smith, answered PCA's appeal, seeking additional attorney fees for work done at the appellate level. For the following reasons, we affirm the judgment of the WCJ, and award Mr. Smith additional attorney fees for appeal.

---

[2] This was confected prior to *Arrant v. Graphic Packaging International, Inc.*, 13-2878 (La. 5/5/15), 169 So.3d 296, which held that hearing loss was to be treated as an occupational disease under the Workers' Compensation Act.

## APPELLANT'S ASSIGNMENTS OF ERROR

PCA advances four assignments of error:

(1) The WCJ erred in awarding SEBs to Mr. Smith, as he retired for reasons unrelated to his work injury prior to Dr. LeBert's recommendation that Smith work only in NIOSH compliant environments.

(2) The WCJ erred in awarding SEBs to Mr. Smith based on the recommendation of Mr. Smith's treating physician that he abide by NIOSH noise exposure guidelines if he returned to work.

(3) The WCJ erred in finding that Mr. Smith was incapable of performing the job of an "A Operator" at the PCA paper mill between September 19, 2018 and September 19, 2020, as a result of Dr. LeBert's NIOSH recommendation.

(4) The WCJ erred in awarding penalties in the amount of $8,000 and attorneys' fees in the amount of $15,000 to Mr. Smith.

## STANDARD OF REVIEW

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Foster v. Rabalais Masonry, Inc.*, 01-1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784 (citation omitted). In that regard, the Louisiana Supreme Court stated in *Stobart v. State, Through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993) (internal citations and quotation marks omitted):

> [T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find

3

manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that the reviewing court must always keep in mind that if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

## LAW AND DISCUSSION

### *Loss of Wage Earning Capacity*

In its first assignment of error PCA, relying on *Poissenot v. St. Bernard Parish*, 09-2793 (La. 1/9/11), 56 So.3d 170, argues that Mr. Smith failed to prove he lost any wage-earning capacity because of any hearing loss sustained during his employment. Instead, it asserts that Mr. Smith voluntarily retired, leaving the workforce for reasons unrelated to his hearing loss and before his treating physician made his NIOSH recommendation.

Conversely, Mr. Smith, relies on *Adams v. Georgia Gulf Lake Charles, LLC*, 17-723 (La.App. 3 Cir. 6/27/18), 249 So.3d 1066, *writ denied*, 18-1272 (La. 11/5/18), 255 So.3d 1053, an occupational noise induced hearing case that rejected a similar argument about the loss of wage-earning capacity based on *Poissenot*. Accordingly, he contends the WCJ correctly found he was entitled to workers' compensation medical benefits, including SEBs. As outlined in *Adams*, he contends he proved entitlement to SEBs by showing three necessary elements: (1) he suffers from occupational noise induced hearing loss; (2) he needs medical treatment (hearing aids and tinnitus medication); and (3) he has been restricted by his treating physician from working in noisy work environments that exceed NIOSH noise exposure limits.

4

In *Hager v. Hosp. Housekeeping Sys., L.L.C.*, 20-38, p. 18 (La.App. 3 Cir. 10/28/20), 305 So.3d 937, 946-47, *writ denied*, 21-0124 (La. 3/16/21), 312 So.3d 1099, this court stated:

> The Louisiana Supreme Court addressed the standards for proving entitlement to SEB payments in *Clay v. Our Lady of Lourdes Regional Medical Center, Inc.*, 11-1797, p. 4 (La. 5/8/12), 93 So.3d 536, 538-39, as follows:
>
>> The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793 (La. 1/9/11), 56 So.3d 170, 174; *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52, 55 (La.1993). La.R.S. 23:1221(3)(a) provides that an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn 90% or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Poissenot*, 56 So.3d at 174; *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551, 556. Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. La.R.S. 23:1221(3)(c)(i); *Poissenot*, 56 So.3d at 174; *Banks*, 696 So.2d at 551.

Louisiana Revised Statutes 23:1031.1(A) provides:

> Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.

"[G]radual noise induced hearing loss caused by occupational exposure to hazardous noise levels" has been recognized as an occupational disease such that the employee's remedy was in workers' compensation rather than in tort. *Arrant v.*

5

*Graphic Packaging International, Inc.*, 13-2878, p. 2 (La. 5/5/15), 169 So.3d 296, 298. Moreover, by definition, "an occupational disease is one in which there is a demonstrated causal link between the particular disease or illness and the occupation." *Id.* at 309.

To better focus on the issue now before us, we note that PCA does not dispute that Mr. Smith established he developed hearing loss as a result of his work at the paper mill and that he was unemployed and earned no wages after January 1, 2017. Nonetheless, PCA contends the burden of proof never shifted to it because Mr. Smith presented no evidence that he was unable to earn wages after that date because of his hearing loss, only that he voluntarily retired for reasons other than his hearing loss. It points out that the *Adams* court failed to fully address this issue. We disagree.

In *Adams*, 249 So.3d at 1069, 1074, this court stated:

> In January 2010, Mr. Adams had back surgery. Although Mr. Adams testified that he had planned to work at Georgia Gulf until the age of seventy, he chose to retire in January of 2011, at the age of sixty-five, after being informed by Georgia Gulf that it was retiring him. In his supplemental appellee brief, Mr. Adams concedes that "the record does establish that Mr. Adams has not sought employment since his retirement from Georgia Gulf and that he now considers himself retired."

> In December 2011, Mr. Adams filed a tort claim alleging occupational noise-induced hearing loss as a result of his employment with Georgia Gulf. In 2015, the Louisiana Supreme Court held, in *Arrant v. Graphic Packaging International, Inc.*, 13-2878, 13-2981 (La. 5/5/15), 169 So.3d 296, that occupational noise-induced hearing loss is an occupational disease under the Louisiana Workers' Compensation Act ("LWCA"). Thereafter, on June 12, 2015, Mr. Adams filed the current workers' compensation claim, seeking SEB as a result of his alleged occupational hearing loss.

> . . . .

> Although Mr. Adams agrees with Georgia Gulf that the *Poissenot* Court stressed that the focus under the statute is on whether a claimant has shown inability to earn ninety percent of his pre-injury

6

wages, Mr. Adams argues that *Poissenot* did not involve, and the Court did not discuss, an occupational illness or disease such as in this case. Thus, Mr. Adams cites to the Louisiana Supreme Court case, *Seal v. Gaylord Container Corp.*, 97-0688 (La. 12/02/97), 704 So.2d 1161, for the proposition that a claimant can establish a prima face case of entitlement to SEB for an occupational illness by noting his age, his limited education and specialized work history, his restrictions from working in his previous employment, and the fact that he earned more than minimum wage. Mr. Adams alleges that there is no question that he established a prima facie case for entitlement to SEB for his occupational hearing loss because he is (1) sixty-five years old, (2) worked forty years with Georgia Gulf, (3) worked thirty-five years in a specialized job at Georgia Gulf, (4) had a noise restriction that prevented him from working in most, if not all, work environments at the plant, (5) had only a high school diploma, and (6) earned four times more than minimum wage. Mr. Adams argues that once he established a prima facie case on the principles set out in *Seal*, then the burden shifted to Georgia Gulf to establish available jobs within Mr. Adams' restrictions, in his geographic area, paying ninety percent or more of Mr. Adams' pre-injury wage. We agree.

Looking closely at the *Adams* decision, one aspect of proof in the award of SEBs, one specifically addressed in *Seal*, needs repetition. The court in *Seal*, 704 So.2d at 1165 (emphasis added), stated:

> Once the employee has established the existence of an occupational disease, for his illness to be compensable, the employee must further establish that the illness is disabling. In other words, **after the employee has established the existence of an occupational disease, then he must further establish that he meets the criteria for one or more of the statutory disabilities**, that is (1) temporary total disability, (2) permanent total disability, (3) supplemental earnings benefits, or (4) permanent partial disability.

In its reasons for judgment in favor of Mr. Smith, the WCJ stated:

> Claimant satisfied his burden of proving by a preponderance of the evidence his entitlement to Supplemental Earnings Benefits ("SEB") in that he is unable to earn at least 90% of his pre-accident wages due to the work-related noise restrictions, his age, level of education, and the fact that his entire work career was limited to the specific type of work performed at Defendant's facility. . . . Because Claimant is retired, Claimant's entitlement to SEB is limited to 104 weeks in accordance with La.R.S. 23:1221(3)(d)(iii).

In the present case, Mr. Smith forthrightly stated he voluntarily retired from PCA for reasons other than his hearing loss. Specifically, he said: (1) his retirement

7

in 2016 had nothing to do with his hearing loss; and (2) he retired because he reached retirement age. Although we find this undisputed, we do not find these facts eliminate Mr. Smith's entitlement to an SEB award as PCA urges.

In *Tower v. ConocoPhillips Co.*, 19-81, p. 8 (La.App. 3 Cir. 11/16/19), 283 So.3d 612, 618-19, we stated:

> Whether a plaintiff is disabled as a result of an occupational disease or illness is a question of fact. *Stutes v. Koch Services, Inc.*, 94-782 (La.App. 3 Cir. 12/7/94), 649 So.2d 987, *writ denied*, 95-846 (La. 5/5/95), 654 So.2d 335; *Jones v. Universal Fabricators*, 99-1370 (La.App. 3 Cir. 2/9/00), 758 So.2d 856, *writ denied*, 00-742 (La. 5/12/00), 762 So.2d 13; *Williams v. Pilgrim's Pride Corp.*, 11-59 (La.App. 3 Cir. 6/1/11), 68 So.3d 616, *writs denied*, 11-1793, 11-1794 (La. 10/21/11), 73 So.3d 384. It is equally well settled that the employee must establish that his illness is disabling to receive compensation for an occupational disease. *Coats v. American Tel. & Tel. Co.*, 95-2670 (La. 10/25/96), 681 So.2d 1243. Moreover, disability marks the time from which it is clear that the employee is no longer able to perform the duties of his employment in a satisfactory manner. *Swearingen v. Air Prod. & Chem. Inc.*, 481 So.2d 122 (La.1986); *Starks v. Universal Life Ins. Co.*, 95-1003 (La.App. 1 Cir. 12/15/95), 666 So.2d 387, *writ denied*, 96-113 (La. 3/8/96), 669 So.2d 400.

In the present case, it was not until September 19, 2018, when Dr. LeBert diagnosed Mr. Smith with an occupational disease, found him disabled, and restricted his work within NIOSH requirements that the basis for his SEB claim was completed. At that time, Mr. Smith's retirement became one directly affected by his disability, and he was properly treated as a person who left work because of an occupational disease—one who has not retired in the traditional sense. Accordingly, we find Mr. Smith presented the WCJ with evidence that he was unable to earn wages because of his occupational hearing loss.

We find this court's treatment of "retirement" in *Adams* supports our resolution here. Like Mr. Adams, who initially retired for reasons other than his occupational disease, Mr. Smith's similar retirement does not preclude him from seeking an SEB award. Rather, his retirement only limits the length of his recovery.

### SEB and Dr. LeBert's Universal NIOSH Restriction

In its second assignment of error, PCA contends the WCJ erred in awarding SEBs to Mr. Smith based upon Dr. LeBert's universal NIOSH restriction, one Dr. LeBert would apply to everyone, should Mr. Smith return to work. PCA argues that Mr. Smith can perform his former job, assuming he uses the same hearing protection under the same circumstances that Dr. LeBert recommends for all employees. Thus, PCA maintains Mr. Smith failed to prove that because of his work injury he was incapable of performing his former job absent some modification of that job.

Mr. Smith argues that Dr. LeBert's universal noise restriction makes it easier to prove entitlement to workers' compensation indemnity benefits. He contends that rather than focusing on the nature of the work restriction, the proper focus is whether the restriction does or does not prevent an injured worker from performing his current job or does or does not prevent an injured worker from earning 90 percent of his average weekly wage in the case of an SEB award. We agree.

Mr. Smith testified that he regularly worked in close proximity to the roar of the paper machines. According to his testimony, the noise of those paper machines were similar to those of a freight train or a jet engine taking off, and he had to shout to coworkers in order to communicate at arm's length at work. In addition, once or twice a week louder steam leaks would occur. In the early days of his employment, ear plugs were neither required nor available. Later, when ear plugs were provided, they were simple rubber or foam ear plugs. Never in the course of his forty-three years of work in the paper industry was double hearing protection consisting of ear plugs and earmuffs required or used.

David Ludolph ("Mr. Ludolph") was the paper mill's Safety Coordinator until his retirement in 2012. He testified that the paper mill was not in compliance with

the OSHA[3] mandated noise conservation program. He further stated that noise surveys were taken at the paper mill which revealed that dosimeter readings in excess of 120 and 130 decibels were routine for operators working near paper machines. To place this into perspective, the NIOSH standards provides that a person can be safely exposed to decibel levels as follows: 115 dBA, 28 seconds; 118 dBA, 14 seconds; 121 dBA, 7 seconds; 124 dBA, 3 seconds; and 127 dBA, 1 second.

From the outset we observe that PCA does not dispute that Mr. Smith established he developed a hearing loss as a result of his work at the paper mill. Confirmation of that hearing loss may be found in Dr. LeBert's examination of Mr. Smith and his diagnosis,[4] the undisputed testimony that Mr. Smith was repeatedly exposed over the course of years to loud noises at the paper mill, and his records of historical audiograms. The record is equally clear that Dr. LeBert acknowledged his application of the NIOSH noise restrictions is one he would make to the general population of workers at PCA and that not all workers at PCA would develop noise induced hearing loss regardless of the NIOSH noise restriction. Nevertheless, Dr. LeBert testified the NIOSH restriction is a work related restriction he would particularly make for Mr. Smith because he suffered noise related hearing loss. By doing so, Dr. LeBert acknowledged that Mr. Smith was more than a laborer subject to the generalized application of the NIOSH noise restrictions—the application of

---

[3] The record shows that there are OSHA and NIOSH standards regarding sound levels. It appears that the greatest difference between the two standards centers on the length of time a person can safely be exposed to each decibel level. To illustrate that point, Mr. Smith's Exhibit G states, "according to the OSHA standard a person can withstand an environment with sound levels at 95 dBA for four hours. After four hours they are at risk for [noise induced hearing loss.] NIOSH maintains that a person is safe in a 95 dBA environment for less than one hour."

[4] It was stated in Mr. Smith's brief to this court that Dr. Gionoli, the physician who provided PCA with a second medical opinion, did not dispute any of Dr. LeBert's findings. We also note that neither in its original nor reply brief did PCA reference Dr. Gianoli's report or rebut Mr. Smith's synopsis of Dr. Gianoli's affirmation of Dr. LeBert's medical opinion.

this restriction to this particular injured individual would prevent further hearing damage.

In the present case, Mr. Smith established that: (1) he was just shy of sixty-three years of age when he last worked for PCA, (2) he worked almost forty-three years with PCA, (3) he worked as an "A Operator," a specialized job at PCA, (4) he had a noise restriction that prevented him from working in most, if not all, work environments at the plant, and (5) he had no education beyond high school; and (6) he earned an annual salary of $104,963.00, significantly more than minimum wage.

Notwithstanding, PCA argues that because Mr. Smith admitted that the only job for which he qualified that would allow him to earn 90% of his pre-injury wage is the job he held at PCA before his retirement, he was required to prove that the work conditions which lead to his hearing loss were no longer present during the SEB period. In support of its argument, PCA points out that Mr. Ludolph's testimony of the mill conditions only related to the time before he himself left the mill in 2012, and he lacked the qualifications to opine whether the facility was NIOSH compliant later than that date. Relying on the testimony of Michael Czudek ("Mr. Czudek"), PCA's safety manager since April 2019, and Christopher Robertson ("Mr. Robertson"), an industrial hygienist, PCA argues that the WCJ manifestly erred in rejecting uncontradicted evidence that nothing prohibited Mr. Smith from performing any job, including the job of an "A Operator" at PCA's facility between September 19, 2018, and September 19, 2020, the period during which Mr. Smith could have been awarded SEBs.

From the outset, we reject the attempt of PCA to impose a separate element of prima facie proof on Mr. Smith, namely, that he failed to prove that the work conditions that resulted in his hearing loss were still present during the SEB period.

11

Our review of the law and the jurisprudence fails to find that such a burden has been imposed on a worker as an element of prima facie proof.

Moreover, in *Trahan v. Trahan*, 10-109, p. 12 (La.App. 1 Cir. 6/11/10), 43 So.3d 218, 228-29, *writ denied*, 10-2014 (La.11/12/10), 49 So.3d 889, the court stated:

> It is well settled in Louisiana that the trier of fact is not bound by the testimony of an expert, but such testimony is to be weighed the same as any other evidence. The trier of fact may accept or reject in whole or in part the opinion expressed by an expert. *Harris v. State ex rel. Dept. of Transp. and Development*, 2007–1566, p. 25 (La.App. 1 Cir. 11/10/08), 997 So.2d 849, 866, *writ denied*, 2008-2886 (La.2/6/09), 999 So.2d 785. The effect and weight to be given expert testimony is within the broad discretion of the trial court. *Morgan v. State Farm Fire and Cas. Co., Inc*., 2007-0334, p. 8 (La.App.11/2/07), 978 So.2d 941, 946.
>
> The decision reached by the trial court regarding expert testimony will not be disturbed on appeal absent a finding that the trial court abused its discretion. *Louisiana State Bar Ass'n v. Carr and Associates, Inc*., 2008-2114, p. 17 (La.App. 1 Cir. 5/8/09), 15 So.3d 158, 171, *writ denied*, 2009-1627 (La.10/30/09), 21 So.3d 292.

*See also Carmichael v. Brooks*, 16-93 (La. App. 3 Cir. 6/22/16), 194 So.3d 832, 838-39, *writ denied*, 16-1396 (La. 11/7/16), 209 So.3d 100, and *writ denied*, 16-1501 (La. 11/7/16), 209 So.3d 100.

On the other hand, the Louisiana Supreme Court addressed the employer's burden of proof in SEB cases and established the minimum burden for employers to prove job availability in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. An employer may meet its burden of proof by providing competent evidence of:

(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;

(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and

12

(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.

*Id.* at 557.

In addition to the assertions of Mr. Czudek and Mr. Robertson, the WCJ heard the testimony of Pamela Drouin ("Ms. Drouin"), PCA's claims adjuster, that PCA never offered Mr. Smith any job after he made demand for SEBs and no attempt was made to identify other available jobs that met the restrictions and pay that would have precluded an SEB award. Mr. Czudek, relying on the fact that claimants such as Mr. Smith were retired, confirmed that no NIOSH compliant job offers were offered to any hearing loss claimants. And Mr. Robertson admitted he was not involved in an attempt to locate any jobs which met Dr. LeBert's NIOSH noise restrictions, or that any jobs were actually available for Mr. Smith.

Against that backdrop, the WCJ considered the evidence in light of the factors delineated in *Seal* and relied upon in *Adams* and determined that Mr. Smith made a prima facie showing that he was entitled to an SEB award. At that point the burden shifted to PCA to establish available jobs within Mr. Smith's restrictions, in his geographic area, paying ninety percent or more of Mr. Smith's pre-injury wage. After examining the evidence in light of La.R.S. 23:1221 and the jurisprudence, the WCJ determined that Mr. Smith made a prima facie showing of entitlement to an SEB award.

We find the record fully supports the WCJ's findings of fact and find no manifest error in the WCJ's determination of this threshold issue. Furthermore, once Mr. Smith made a prima facie showing of his entitlement to an SEB award, the burden shifted to PCA to establish available jobs within Mr. Smith's restrictions, in his geographic area, paying ninety percent or more of his pre-injury wage. The record is

13

clear that PCA made no such showing. Therefore, we find no error in the WCJ's award of SEBs to Mr. Smith.

***Penalties and Attorney Fees***

Next, PCA argues that the WCJ erred in awarding penalties of $8,000.00 and $15,000.00 in attorney fees. PCA contests these awards in two distinct ways.

First, it argues that the WCJ erred in awarding penalties and attorney's fees for its failure to provide vocational rehabilitation services under La.R.S. 23:1226. It points out that the goal of rehabilitation is to return the disabled worker to employment as soon as possible after an injury occurs. PCA continues by noting that in *Mason v. Auto Convoy*, (La.App. 2 Cir. 11/1/95), 662 So.2d 843, 848, the court stated that "an employee who retired because he has withdrawn from the work force has no need for rehabilitation or a job market survey. These benefits are provided to an employee who aspires to return in some capacity to the work force under the goal or scheme of the statute." In the present case, PCA points out that Mr. Smith retired from the work force and had no intention of returning to work. Thus, vocational rehabilitation was not called for. PCA further contends that pursuant to *Chelette v. Riverwood Intern., USA, Inc.*, 03-1483 (La. 10/17/03), 858 So.2d 413, "the sanction of penalties and attorney fees imposed by La.R.S. 23:1201 is not directed at the vocational rehabilitation obligation of La.R.S. 23:1226."

Secondly, PCA argues that it had a good faith legal and factual basis to dispute Mr. Smith's entitlement to SEBs. Although PCA does not dispute that Mr. Smith was entitled to medical benefits, it points out that it was entitled to a $30,000.00 credit toward any amount owed to Mr. Smith. PCA contends that even if this court finds it owed SEBs, thus exhausting PCA's $30,000.00 credit prior to May 8, 2020,

14

when Dr. LeBert requested approval for hearing aids, the maximum penalty it could have owed was $6,000.00.

As to the question of vocational rehabilitation, Mr. Smith, relying on *Lollis v. Shaw Global Energy Serv.*, (La.App. 3 Cir. 10/3/07), 966 So.2d 1118, disputes PCA's contrary argument. Nevertheless, he further suggests that we do not need to reach that argument because the $8,000.00 maximum amount provided in La.R.S. 23:1201 is met as more than four $2,000.00 penalties existed independent of vocational rehabilitation.

An employer is subject to penalties and attorney fees should it fail to reasonably controvert an employee's claim. La.R.S. 23:1201(F); *see also Leger v. A-1 Nursing Registry*, 98-1731 (La.App. 3 Cir. 4/28/99), 737 So.2d 142, *writ denied*, 99-1555 (La. 9/24/99), 749 So.2d 633. The standard of review for whether penalties and attorney fees were appropriately assessed in a workers' compensation case is that of manifest error. *See Bennett v. Pilgrim's Pride*, 07-753 (La.App. 3 Cir. 12/12/07), 972 So.2d 423, *writ denied*, 08-103 (La.3/7/08), 977 So.2d 907.

After reviewing the record and the argument of counsel, we find it unnecessary to reach the argument raised by PCA regarding vocational rehabilitation services. Mr. Smith made numerous requests to PCA to provide medical treatment, testing, and the award of SEBs. These were based upon Dr. LeBert's report which outlined Mr. Smith's diagnosis, the job restrictions, and various medical recommendations, including approval of a hearing aid evaluation, a request for Lipo Flavonoid for the treatment of tinnitus, approval of a follow-up audiogram, and a request for the payment for hearing aids. These requests as well as a demand for the payment of SEBs were not provided by PCA.

15

What follows is the colloquy between counsel for Mr. Smith and Ms. Drouin, PCA's claims adjuster, who addressed various issues involving non-payment, including reference to the earlier tort settlement of 2013, to-wit:

Q. [B]y 2020, even if you were thinking that there might be a credit because of that tort settlement, that would have been completely used up well before that; and so, that wasn't the reason you didn't pay for the hearing aids; was it?

A. No.

. . . .

A. Talking to the defense, it was said that we were not going to authorize paying for these hearing aids.

Q. Okay. And you have no other reason not to pay for hearing aids other than some lawyer must have told you some reason not to do it but you don't want to share it with the Court because I guess you claim that's attorney/client privilege?

A. That was my directive by my supervisor. I was . . . told that we were not paying anything. We were not paying any medical and we weren't paying any SEB.

Q. Even when Dr. Gianoli [(PCA's choice of a physician who provided a second medical opinion)] agreed with . . . Dr. LeBert?

A. Yes, I'm going by what I was told.

Q. Okay. . . . [I]t sounds to me like you sort of disagreed with that but you had to do it because you were told to; is that fair?

A. I was – I was told what to do.

Q. Did you believe, though, that these probably were owed because you have a treating doctor and the second opinion doctor that both agreed that it's compensable?

A. Yes.

It is apparent that PCA knowingly chose to test various arguments in the trial court to challenge Mr. Smith's entitlement to workers' compensation medical benefits and an award for SEBs. The WCJ rejected those arguments, and we have affirmed that judgment. Reliance on an erroneous interpretation of a law subjects

16

the employer to penalties and attorney fees. *McCarty v. State Office of Risk Mgt.*, 94-33 (La.App. 3 Cir. 10/5/94), 643 So.2d 886; *Rothell v. City of Shreveport*, 626 So.2d 763, *writ denied*, 93-3191 (La. 2/11/94), 634 So.2d 379; *McKenzie v. City of Bossier*, 585 So.2d 1229 (La.App. 2 Cir. 1991).

We next turn to Mr. Smith's answer to the appeal, seeking an increase in the attorney fee award for defending the judgment of the WCJ.

"The award of additional attorney fees is warranted when the claimant successfully defends its judgment." *Thomas Med. Grp., APMC v. Stine, LLC*, 10-580, p. 5 (La.App. 3 Cir. 12/8/10), 52 So.3d 993, 997. "Generally, when an award for attorney's fees is granted [by the WCJ], additional attorney's fees are proper for work done on appeal [so as] to keep the appellate judgment consistent with the underlying judgment." *Wilczewski v. Brookshire Grocery Store*, 08-718, p. 18 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, 1226, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170.

Based upon counsel's successful defense of the WCJ judgment, we award an additional attorney fee of $5,000.00.

### DECREE

For the foregoing reasons, we affirm the judgment of the Workers' Compensation Judge. Additionally, the judgment of the Workers' Compensation Judge is amended, and judgment is rendered in favor of Lyman Smith and against Packaging Corporation of America in the amount of $5,000.00 as additional attorney fees for the work necessitated by this appeal. All costs of this appeal are assessed against Packaging Corporation of America.

**AFFIRMED.**